**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 26-cv-27427-BLOOM**

ROODMAEL JEAN PHILIPPE,

Petitioner,

v.

WARDEN, Krome North Service Processing Center; GARRETT RIPA, Miami Field Office Director, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement ("ICE"); DAVID VENTURELLA, Acting Director, ICE; MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security; TODD BLANCHE, Attorney General of the United States.

Respondents.
_______________________________________________/

**ORDER DENYING 28 U.S.C. § 2241 PETITION**

**THIS CAUSE** is before the Court upon Petitioner Roodmael Jean Philippe's ("Petitioner") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 ("Petition"). ECF No. [1]. Petitioner challenges his immigration detention at Krome North Service Processing Center in Miami, Florida, and seeks release or an individualized bond hearing before an immigration judge. *See generally* ECF No. [1]. The Court ordered a response from Respondents. *See* ECF No. [6]. Respondents timely filed a Response, arguing that the Petition should be denied because Petitioner is an arriving alien subject to mandatory detention under 8 U.S.C. § 1225(b). ECF No. [11] at 2. The Court has considered the Petition, the Response, the record in this case, applicable law, and is otherwise fully advised. For the reasons set forth below, the Petition is denied.

## I. FACTUAL BACKGROUND

Petitioner states he is a citizen of Haiti, and he entered the United States without inspection or parole in 2022. ECF No. [1] ¶¶ 1–2. Respondents state that Petitioner entered the United States on July 14, 2022, and Petitioner was paroled into the United States for a period not to exceed July 13, 2023. ECF Nos. [11] at 1; [11-2].[1]

On July 16, 2026, Petitioner was charged with Strong Arm Robbery, False Imprisonment, and Tampering with a Witness. ECF No. [11-3]. The charges are currently pending in Miami-Dade County. *Id.* Petitioner was granted pre-trial release and was released from state custody on September 17, 2026. *Id.*

On October 15, 2026, Immigration and Customs Enforcement ("ICE") conducted enforcement operations targeting Petitioner. ECF No. [11-1]. Following a traffic stop, ICE detained Petitioner and issued him a Notice to Appear, charging him as an arriving alien and inadmissible under § 212(a)(7)(A)(i)(I) of the Immigration Nationality Act ("INA") for not being in possession of a valid visa, permit, or other documentation. ECF No. [11-6]. Petitioner is currently detained at Krome North Service Processing Center pending the outcome of his removal proceedings. ECF No. [11-4].

Petitioner filed the instant Petition asserting that his detention is unlawful and violates the Fifth Amendment Due Process Clause. ECF No. [1] at 5. Petitioner seeks immediate release or an individualized bond hearing before an immigration judge. *Id.* at 6.

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 2241(a), district courts have the authority to grant writs of habeas

[1] Petitioner also states he applied for asylum based on his fear of returning to Haiti, but there is no record provided by Petitioner or Respondents to confirm whether an application was filed or adjudicated. *See* ECF Nos. [1] ¶ 19; [11].

corpus. Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may be issued to a petitioner who demonstrates that he is being held in custody in violation of the Constitution or federal law. *See* 28 U.S.C. § 2241(c)(3). The Court's jurisdiction extends to challenges involving immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

Petitioner asserts that his detention is unlawful and seeks immediate release or an individualized bond hearing because his detention is governed by 8 U.S.C. § 1226(a). ECF No. [1] ¶ 3, 24–26. Respondents argue that Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2) because Petitioner was paroled into the United States and is thus treated as an applicant for admission seeking admission. ECF No. [11] at 2–8. Respondents assert that even if § 1226 applied to Petitioner, he would be subject to mandatory detention under § 1226(c). *Id.* at 8–9.

### A. Detention under § 1225 or § 1226

The Eleventh Circuit has issued a binding opinion regarding the interpretation of § 1225 and § 1226. *See Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258 (11th Cir. 2026). The Eleventh Circuit upheld the district court's ruling that the petitioners, who entered the United States without inspection, were apprehended in the interior of the country years later, and had either no or minimal, traffic-related criminal histories, were entitled to a bond hearing under § 1226(a), despite the Government's position that the petitioners were properly held without bond under § 1225(b)(2). *Id.* at 1285. Consistent with this Court's prior rulings and the rulings of numerous other courts, the Eleventh Circuit rejected Respondents' "re-interpretation" of the Immigration and Nationality Act ("INA") that foreign nationals already in the country are under the purview of § 1225(b)'s mandatory detention. *Id.* at 1262. The Eleventh Circuit explained that an "applicant for admission" is a term of art that "'deems' an alien to be an applicant merely by

arriving or being present in the United States without having been admitted." *Id.* at 1267. Conversely, an applicant for admission who is "seeking admission" is someone in "pursuit of 'lawful entry . . . after inspection and authorization by an immigration officer[.]" *Id.* at 1269. Thus, someone is properly detained pending removal proceedings under § 1225(b)(2)(A) "if he (1) is arriving in the United States or is present in the United States without having been granted lawful entry; (2) is seeking lawful entry after inspection and authorization by an immigration officer; and (3) is not clearly and beyond a doubt entitled to lawful entry, as determined by the examining immigration officer." *Id.* (citing § 1225(b)(2)(A)).

Here, Petitioner is not properly subject to mandatory detention under § 1225(b)(2)(A). Petitioner is neither "arriving in the United States[,]" nor is he "present in the United States without having been granted lawful entry[.]" § 1225(b)(2)(A). Petitioner *arrived* in the United States in 2022. ECF No. [11-2]. He was present in the United States after being lawfully paroled. *Id.* Petitioner was subsequently detained by immigration officials while in the interior of the country over four years later, in October 2026. ECF No. [11-4]. Respondents' attempts to justify mandatory detention under § 1225(b)(2) beyond arriving aliens seeking entry *at the border* is improper. *See Hernandez Alvarez*, 175 F.4th at 1276 ("The INA's text confirms that the two relevant sections on detention govern distinct classes of aliens: § 1225 applies to arriving aliens seeking entry *at the border*[.]" (emphasis and alteration added)); *see also Jennings v. Rodriguez,* 583 U.S. 281, 288 (2018) ("Section 1226 generally governs the process of arresting and detaining [aliens present in the country] pending their removal." (alteration added)).

In upholding the district court's grant of a bond hearing pursuant to § 1226(a), the Eleventh Circuit concluded, "[s]imply put, the language that Congress has chosen to use does not grant to the Executive unfettered authority to detain, without the possibility of bond, every unadmitted

alien present in the country . . . [I]t appears to us that Congress has instead preserved the longstanding border-interior distinction for purposes of detention, a position it has taken for over a hundred years." *Hernandez Alvarez*, 175 F.4th at 1285 (alterations added). Therefore, this Court applies the Eleventh Circuit's holding in *Hernandez Alvarez* to conclude that Petitioner is, as a matter of statutory interpretation, not lawfully held under 8 U.S.C. § 1225(b)(2).

The Court pauses to make one clarifying point. In *Department of Homeland Security v. Thuraissigiam*, the Supreme Court stated that "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" 591 U.S. 103, 139 (2020). Similarly, in *Assa'ad v. U.S. Atty. Gen.*, 332 F.3d 1321, 1338 (11th Cir. 2003), the Eleventh Circuit indicated that "parole" means "that the alien is allowed into the country but remains constructively at the border, seeking admission and subject to exclusion proceedings." Accordingly, some courts in this district have understood those like Petitioner remain subject to detention under § 1225(b)(2). *See, e.g.*, *Arsanukaev v. Warden Krome N. Serv. Processing Ctr.*, No. 26-CV-25667, 2026 WL 3399500, at *4 (S.D. Fla. Nov. 10, 2026).

But neither *Thuraissigiam* nor *Assa'ad* grappled with those who are re-detained *post-termination* of parole. And that status is critical because it is parole status that maintains the "entry fiction"—that is, the legal fiction wherein the paroled alien is considered to be standing at the border despite physical entry into the country, *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958), and is considered to still be "seeking admission." *Assa'ad*, 332 F.3d at 1338. After the parole expires—and certainly, as here, over three years later—the very legal device that maintains the relevant legal fiction is no longer operative. In such a case, the non-citizen is undoubtedly more analogous in status to the category of individuals identified in *Hernandez Alvarez* than to one

standing at the border seeking lawful entry.

Here, Petitioner plainly does not satisfy the second prong of § 1225(b)(2) status identified in *Hernandez Alvarez*. He is not "seeking . . . entry." The Eleventh Circuit in *Hernandez Alvarez* clearly interpreted the phrase "seeking admission" in a very literal manner—as necessarily "indicating an affirmative step of search or pursuit." *Hernandez Alvarez*, 175 F.4th at 1268 (citation omitted). The term "is describing some active and temporally ongoing step or process on the part of the alien." *Id.* (citation omitted). Parole creates a legal fiction that allows the alien to be treated as if he is still "seeking" lawful entry when—as a literal matter—he is not doing so. When parolee status no longer exists, it stretches the bounds of reason to argue that the legal fiction is still in effect. And if Petitioner is not subject to § 1225(b)(2) by way of the parole device's legal fiction, he is simply an individual living in the interior without status or active pursuit of status—precisely the category of individuals that *Hernandez Alvarez* identified as being entitled to a bond hearing under § 1226(a).

Because the Court finds that Petitioner is not subject to detention under § 1225(b)(2) but instead § 1226, it now turns to Respondents' argument that Petitioner is subject to mandatory detention under § 1226(c).

**B. Detention under § 1226(a) or § 1226(c)**

Respondents argue that § 1226 does not govern Petitioner's detention, but even if § 1226 applies, Petitioner would be detained under § 1226(c)(1)(ii) because of his criminal conduct. ECF No. [11] at 8–9. Petitioner did not file a Reply and does not respond to Respondents' § 1226(c) arguments.

Section 1226(c) provides for mandatory detention for aliens with qualifying criminal histories, including an alien who

> is charged with, is arrested for, is convicted of, admits having committed, or admits

> committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person, when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1)(ii). Aliens detained under § 1226(c) are not statutorily entitled to a bond hearing. *See Tomlinson v. Swartz*, No. 24-24844-CV, 2025 WL 1568213, at *3 (S.D. Fla. Jan. 31, 2025) (analyzing *Jennings v. Rodriguez*, 583 U.S. 281 (2018)).

Here, Petitioner is charged with "Strong Arm Robbery" without a firearm or weapon, in violation of Fla. Stat. § 812.13(2)(c). ECF Nos. [11-1], [11-3]. As defined in § 812.13,

> "Robbery" means the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear.

Fla. Stat. § 812.13(1). The offense of robbery without carrying a firearm or other weapon is charged as a second-degree felony under § 812.13(2)(c). Strong Arm Robbery under § 812.13 constitutes a crime of larceny such that Petitioner's arrest and currently pending charges subject Petitioner to mandatory detention under § 1226(c)(1)(ii). Therefore, Petitioner is lawfully detained and is not entitled to a bond hearing.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, **ECF No. [1]**, is **DENIED**.
2. The portion of the Court's Order to Show Cause staying Petitioner's removal from the Southern District of Florida until further order of the Court, **ECF No. [6] at 2**, is **LIFTED**.

3. The Clerk of Court shall **CLOSE** this case.
4. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 19, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:
Counsel of Record